# EXHIBIT 4

NOT TO BE PUBLISHED

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SAMUEL REVAS CONTRERAS,<br><br>    Defendant and Appellant. | B075929<br><br>(Super. Ct. No. PA001712)<br><br>COURT OF APPEAL - SECOND DIST.<br><br>F I L E D<br><br>JUL 2 ? 1994<br><br>JOSEPH A. LANE, Clerk<br>T. CARTER<br>    Deputy Clerk |

APPEAL from a judgment of the Superior Court of Los Angeles County. Shari K. Silver, Judge. Modified and affirmed.

Jerald W. Newton, by appointment of the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General of the State of California, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Senior Assistant Attorney General, Kenneth C. Byrne, Supervising Deputy Attorney General, and Arthur H. Auerbach, Deputy Attorney General, for Plaintiff and Respondent.

Defendant Samuel Revas Contreras appeals his conviction, by a jury, of second degree murder. On appeal, he contends that the trial court erred by instructing the jury, pursuant to CALJIC No. 4.21.1, that an act committed while one is in a state of voluntary intoxication is not less criminal by reason of the state of intoxication.1/

Viewed in accordance with the usual rules of appellate review (People v. Barnes (1986) 42 Cal.3d 284, 303), the evidence established that on December 9, 1989, Robert Cruz drove with two friends, Sebastian Montes and Octaviano Hernandez, to the 7-Eleven to purchase beer. Hernandez stayed in the back seat while the other two entered the 7-Eleven. At approximately the same time, defendant and four other people also drove to the same 7-Eleven for beer. While both groups of people were at the convenience store, a gang confrontation developed. Someone from Cruz's car yelled "Playboys,"2/ to which someone from defendant's group replied, "Fuck Playboys.

---

1/ Defendant also challenges the constitutionality of the reasonable doubt instruction. This argument has been rejected by the California Supreme Court in People v. Wilson (1992) 3 Cal.4th 926 and the United States Supreme Court in Victor v. Nebraska (1994) ___ U.S. ___ [127 L.Ed.2d 583]. In addition, defendant's argument that the court was required to instruct the jury that each element of the offense must be proved beyond a reasonable doubt was rejected by the California Supreme Court in People v. Reed (1952) 38 Cal.2d 423, 430. Thus, we are precluded from holding otherwise. (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455.)

2/ This may or may not have been in response to the question, "Where are you from?"

This is 18th Street." From the back seat of Cruz's car, Hernandez stated "This is how we get respect." Two of defendant's group opened Cruz's car door and began arguing and fighting with Hernandez. Though they did not mention this in their police interviews in the days following the incident, at trial two of defendant's companions testified that someone in the victim's car hit defendant's friend, Andres Arellanos, in the head with a bottle, and that Arellanos was bleeding. Defendant witnessed the altercation when he came out of the 7-Eleven, retrieved a gun from his car, and shot Hernandez twice in the abdomen. Defendant told the police that he meant to shoot the victim in the leg, to prevent him from leaving the vehicle. Hernandez died from his wounds.

At trial, defendant admitted shooting Hernandez but maintained that he was acting upon a sudden quarrel and in the heat of passion when he saw his friend Arellanos bleeding and came to his rescue. Two days after confessing, he gave another statement to the police, in which he said, "I just wanted to tell you that I feel really bad for shooting the guy. I was loaded on cocaine for two days. Now that I came off my high I feel really bad. We were really drunk too." Another of defendant's cohorts testified that all of the people in defendant's group were drunk.

3.

Defendant contends the trial court erred by instructing the jury with CALJIC No. 4.21.1, as it confused the jury. That instruction, as read to the jury, was as follows:

> "Under the law, it is the general rule that no act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition."
>
> "Thus, in the crime of [murder] charged in Count one, or the crime of [voluntary manslaughter] which is lesser thereto,[3] the fact the defendant was voluntarily intoxicated is not a defense and does not relieve defendant of responsibility for the crime. This rule applies in this case only to the crime of [murder], and the lesser crime of [voluntary manslaughter].
>
> "However, there is an exception to this general rule, namely where a specific intent or mental state is an essential element of a crime. In such event, you should consider the defendant's voluntary intoxication in your determination of whether the

---

[3] CALJIC No. 4.21.1 is designed to be given when a defendant is charged with both a general and a specific intent crime. The offenses inside the brackets should have been the general intent crimes on which the jury was to be instructed, here the lesser included offense of involuntary manslaughter.

4.

defendant possessed the required specific intent or mental state at the time of the commission of the alleged crime.

"Thus, in the crime of murder charged in Count one, or the crime of voluntary manslaughter, a necessary element is the existence in the mind of the defendant of a certain specific intent or mental state which is included in the definition of the crimes set forth elsewhere in these instructions.

"If the evidence shows that a defendant was intoxicated at the time of the alleged crime, you should consider that fact in determining whether or not such defendant had such specific intent or mental state.

"If from all the evidence you have a reasonable doubt whether the defendant had such specific intent or mental state, you must find that defendant did not have such specific intent or mental state."

Defendant maintains that the foregoing instruction was given in error, since the defense case was premised on his inability to form the intent to kill due to his intoxication, and the foregoing instruction as given was incorrect, stating that one rule (intoxication irrelevant) applies to the crime of murder and voluntary manslaughter, and another rule

5.

(intoxication relevant to specific intent) applies to the very same offenses. However, the record does not support defendant's characterization of the defense he presented to the jury. Although there was some evidence that defendant was intoxicated on alcohol and possibly cocaine at the time of the shooting, a thorough review of the record reveals that defendant did not rely on his intoxication to negative an element of the charged offense.

Defense counsel articulated the defense theory of the case as follows: "I would submit to you that it appears from the evidence that this was not a case of a planned killing where Samuel Contreras premeditated and deliberated before shooting Octaviano Hernandez. Rather, the evidence tends to establish that this was an impulsive reaction that was provoked by the actions of the decedent and was not intended to kill anyone."

Imperfect defense of another, that is, an honest but unreasonable belief that his friend Arellanos was in grave danger, was also argued: "Reasonable or unreasonable, this is somebody who's seen his brother get killed, who's been stabbed and almost died himself, and he sees something going on of a gang nature and he gets scared, and that's why he reacted. [¶] I would submit to you that with all that has happened in Sam Contreras'[s] life, this caused him to react rashly without due deliberation and reflection and from passion rather than

6.

judgment." And later, "Here you're not dealing with a gang member. You're rather dealing with somebody who went to the aid of his friend. Rightly or wrongly. That was in his mind and that's what motivated him."

Defense counsel argued defendant's use of intoxicants as follows: "He was under the influence of cocaine and alcohol. And I submit to you cocaine makes people paranoid and alcohol can tend to cloud judgment. So couple these with what Sam has been through in his life and you get the kind of impulsive behavior that he had that evening. Couple it with where he's grown up. Couple it with the fact that he's been in a situation where his other brother was in a gang. He certainly knows about a lot of bad things. . . . [¶] We know twice he's been hurt badly. One of them we know was another gang member hurt him badly. So, this is what he's dealing with in his mind. It's not what we are dealing with in our minds."

Indeed, defense counsel focused more on the victim's intoxication than on the defendant's. Thus, noting that Hernandez had alcohol, cocaine and benzoylecgonine in his system, counsel suggested that Hernandez provoked the confrontation. "I would submit to you that Octavio [sic] Hernandez is what is referred to as an angry drunk. And when a killing occurs as a result of a sudden quarrel such as we have

- 7.

here, the crime is manslaughter. And that is what we have here."

In summarizing his argument, defense counsel stated: "Ladies and gentlemen, the evidence in this case is clear that there was a sudden quarrel, and Sam Contreras acted in an honest belief that his friend was being hurt. [¶] This case, in my opinion, is the classic textbook case of why we distinguish manslaughter from murder. [¶] Murder is deliberate. There's a thought process. Murder is planned. Murder is something that you want to do. Manslaughter is usually the result of a sudden quarrel or heat of passion. Plain and simple, that's what we have here. That's exactly what you have seen here."

We conclude from our review of the record that defense counsel did not defend this case based on defendant's failure to form the requisite intent to kill due to intoxication, but on the theory that he acted in the heat of passion and in an honest but unreasonable belief in the necessity of defending his friend.4/ Thus, the incorrect recitation of CALJIC No. 4.21.1 was harmless.

---

4/  Indeed, intent to kill is an element of the offense of voluntary manslaughter. Thus, far from arguing that intoxication prevented defendant from forming the intent to kill, counsel conceded such intent in his argument to the jury.

8.

The parties agree that defendant's custodial credits were incorrectly calculated, and that he is entitled to additional days of presentence custody credit.

## DISPOSITION

The trial court is directed to prepare a new abstract of judgment reflecting 1785 days of presentence custody credit, consisting of 1191 days of actual custody and 594 days of good time/work time. As so modified, the judgment is affirmed.

<u>NOT TO BE PUBLISHED</u>.

ARMSTRONG, J.

We concur:

TURNER, P.J.

GRIGNON, J.

OFFICE OF THE CLERK
COURT OF APPEAL
STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT
JOSEPH A. LANE, CLERK

DIVISION: 5

Samuel Revas Contreras   H-70748                B075929
Stark Youth Training School
P.O. Box 800
Ontario, CA. 91761

RE: PEOPLE OF THE STATE OF CALIFORNIA
    vs.
    CONTRERAS, SAMUEL REVAS

    2 Criminal B075929
    Los Angeles No. PA001712